Adam Rose (210880)
adam@frontierlawcenter.com
Manny Starr (319778)
manny@frontierlawcenter.com
FRONTIER LAW CENTER
23901 Calabasas Road, #2074
Calabasas, California 91302
Telephone: (818) 914-3433
Facsimile: (818) 914-3433

Sam Donabedian (304196)
sdonabedian@donabedianlaw.com
DONABEDIAN LAW
21550 Oxnard Street, 3rd Floor
Woodland Hills, California 91367
Telephone: (213) 761-7268
Facsimile: (213) 799-3000

Attorneys for Plaintiff
Veronica Smith

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA SMITH, individually and on behalf of all others similarly situated and all aggrieved employees,<br><br>Plaintiff,<br><br>v.<br><br>BUDGET RENT A CAR SYSTEM, INC., AVIS BUDGET GROUP, INC., and DOES 1 to 10,<br><br>Defendants. | CASE NO. 2:19-cv-04720-SVW (PLAx)<br><br>PLAINTIFF VERONICA SMITH'S RENEWED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND PAGA ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ADAM ROSE; PROPOSED ORDER<br><br>Date:, July 27, 2020<br>Time: 1:30 p.m.<br>Ctrm: 10A |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on June 8, 2020 at 1:30 p.m. or as soon thereafter as may be heard in Courtroom 10A of the Central District of California located at 350 W. First

Street, Los Angeles, CA 90012, plaintiff Veronica Smith will move the Court for preliminary approval of the class, collective, and PAGA action settlement pursuant to Fed. R. Civ. Pro. 23(e), 29 USC § 216(b), and Cal. Lab. Code, § 2699(l)(2). The motion is based on this notice, the memorandum of points and authorities, the declaration of Adam Rose and its exhibits, pleadings on file, and oral arguments at the hearing.

Date: June 22, 2020                                    FRONTIER LAW CENTER


                                                       /s/ Adam Rose
                                                       Attorney for Plaintiffs
                                                       Veronica Smith

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................1

II.  THEORIES OF THE CASE.........................................................................2

     1.   Failure to Pay Overtime at the Correct Rate .........................................2

     2.   Meal Break Violations .............................................................................3

     3.   Wage Statement Penalties........................................................................3

     4.   PAGA Penalties .......................................................................................4

III. TERMS OF THE SETTLEMENT .................................................................4

IV.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF
     THE SETTLEMENT....................................................................................5

     1.   Legal Standard for Preliminary Approval...............................................5

     2.   The Settlement Class Meets the Prerequisites for Certification
          under Rule 23 ..........................................................................................6

          A.   Numerosity.......................................................................................6

          B.   Commonality ....................................................................................7

          C.   Typicality.........................................................................................7

          D.   Adequacy .........................................................................................8

          E.   Predominance....................................................................................9

          F.   Superiority .......................................................................................9

3.    The Proposed Class Notice is Sufficient ..............................................10

4.    The Court Should Preliminarily Approve the Settlement....................11

    A.    The Class Representatives and Class Counsel Have
        Adequately Represented the Class..............................................12

    B.    The Proposed Settlement Is Fair Because It Was the
        Product of Arm's Length Non-Collusive Negotiations............12

    C.    The Settlement is Reasonable and Adequate............................13

    D.    The Proposed Settlement Treats the Class Members
        Equitably Relative to Each Other ..............................................14

V.    CONCLUSION ..............................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Alberto v. GMRI, Inc*., 252 F.R.D. 652, 659 (E.D. Cal. 2008). ..........................................6

*Amchem Products, Inc. v. Windsor*, 521 US 591, 615.........................................................9

*Ansari v. New York Univ.* (SD NY 1998) 179 FRD 112, 114 .............................................7

*Blackwell v. SkyWest Airlines, Inc.* (S.D. Cal. 2007) 245 F.R.D. 453, 467 .......................9

*Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1041 (2012)................................3

*Dalton v. Lee Publications, Inc.*, 270 F.R.D. 555, 560 (S.D. Cal. 2010). ...........................7

*Featstent v. City of Youngstown* (N.D. Ohio 1993) 859 F.Supp.1134 ................................2

*Feinman v. Federal Bureau of Investigation*, 269 FRD 44, 49 (D.D.C. 2010). .................6

*General Telephone Co. of Southwest v. Falcon* (1982) 457 U.S. 147, 156.........................7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ......................................12

*Holak v. Kmart*, 2015 U.S. Dist. LEXIS 65439 (E.D. Cal. June 2014)..............................3

*In re High–Tech Emp. Antitrust Litig*., 2014 WL 3917126..............................................16

*In re Mego Fin'l Corp. Secur. Litig.* (9th Cir. 2000) 213 F3d 454, 462 ..............................8

*In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007),.............................................................................................................................11

*Jane Roes 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035 (9th Cir. 2019).............................12

*Millan v. Cascade Water Servs., Inc*., 310 F.R.D. 593, 613 (E.D. Cal. 2015) .................12

*Mullen v. Treasure Chest Casino, LLC* (5th Cir. 1999) 186 F3d 620, 627 .......................9

*Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc*., No. CV F 10-1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) ...........................................14

*Rosario v. Livaditis* (7th Cir. 1992) 963 F.2d 1013, 1018.................................................8

*Satchell v. Fed. Express Corp*., 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ...............................................................................................................12

*Thorn v. Jefferson-Pilot Life Ins. Co.* (4th Cir. 2006) 445 F.3d 311, 318-319.................10

*Tijero v. Aaron Bros., Inc*., 2013 WL 60464, at *10 (N.D. Cal. Jan. 2, 2013).................14

*Valentino v. Carter-Wallace, Inc.* (9th Cir. 1996) 97 F.3d 1227, 1231-1232 ...................9

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482,489 (E.D. Cal. 2010). ...............15

*Vega v. T-Mobile USA, Inc.* (11th Cir. 2009) 564 F.3d 1256, 1278...................................10

*Villalpando v. Exel Direct, Inc.*, 303 F.R.D. 588, 605-06 (N.D. Ca. 2014). .......................7

*Vinh Nguyen v. Radient Pharm. Corp.,* 2014 WL 18022393, at *5 (C.D. Cal.
    May 6, 2014)........................................................................................................14

*Wal-Mart Stores, Inc. v. Dukes* (2011) 564 U.S. 338, 350 ....................................................7

**<u>Statutes</u>**

29 C.F.R. § 778.115 ...................................................................................................................2

29 USC § 207 .............................................................................................................................2

Cal. Lab. Code § 226 .................................................................................................................3

Cal. Lab. Code § 226.7 ..............................................................................................................3

Cal. Lab. Code § 510 .............................................................................................................2, 3

Cal. Lab. Code § 512 .................................................................................................................3

Cal. Labor Code § 2699 .............................................................................................................4

**<u>Rules</u>**

Fed. R. Civ. P. 23...............................................................................................................passim

**<u>Treatises</u>**

Manual for Complex Litig., Second, § 30.44 (1985)...............................................................11

RENEWED MOTION FOR PRELIMINARY APPROVAL

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

This case involves a class action, Fair Labor Standards Act ("FLSA") overtime claim, and a Private Attorney General Act ("PAGA") claim relating to Plaintiff Veronica Smith's work for Defendants Budget Rent A Car System, Inc. and Avis Budget Group, Inc. Plaintiff's employment with Defendants began in May 2014. She works as a "Rapid Return Agent" at Defendants' Los Angeles International Airport location, where she helps customers return their rental cars. The main theories of this case are Defendants' failure to pay overtime at the correct rate, its failure to pay meal break premiums for late, short, or missed meal breaks, and waiting time and wage statement penalties based thereon.

The original complaint was filed on May 30, 2019 in the Central District of California, case number 2:19-cv-04720-SVW (PLAx) as a class action and FLSA collective action. A first amended complaint was filed on June 21, 2019 which added PAGA penalties. A second amended complaint was filed on September 4, 2019 which added a Defendant. A third amended complaint was filed on May 8, 2020 adding a claim for meal period premiums.

On January 13, 2020, after an informal exchange of information, the parties attended a full-day mediation with experienced employment law mediator Deborah Crandall Saxe, Esq. of JAMS. After extensive, arms-length negotiations, a settlement was reached. The gross settlement amount is $400,000.00. As of November 1, 2019, there were 417 class members during the class period, which is from May 30, 2015 through final approval of this settlement, and 280 aggrieved employees during the PAGA period, which is from April 15, 2018 through approval.

The parties now request that the Court approve this settlement and enter an order for the following: 1) granting preliminary approval of the settlement, 2) certifying the settlement class/collective, 3) approving the manner and form of providing notice to the class, 4) appointing Frontier Law Center as class counsel, 5)

1  appointing Phoenix Class Action Administrators as the settlement administrator, and

2  6) setting a date for final approval.

## II.    THEORIES OF THE CASE

The third amended complaint contains the following causes of action: (1) violation of Cal. Lab. Code § 510 for unpaid overtime, (2) violation of Cal. Lab. Code § 226 for inaccurate wage statements, (3) unfair competition; (4) violation of the Fair Labor Standards Act; (5) PAGA penalties; and (6) violation of Cal. Lab. Code §§ 512 and 226.7 for meal break penalties.

### 1.  Failure to Pay Overtime at the Correct Rate

The FLSA and California law requires that overtime be based on the regular rate of pay. 29 USC § 207(a)(2); Labor Code § 510. The regular rate of pay "includes all remuneration for employment paid to, or on behalf of, the employee..." (29 USC § 207(e).) There are multiple federal cases that confirm this, such as *Featstent v. City of Youngstown* (N.D. Ohio 1993) 859 F.Supp.1134, which states that "[n]ondiscretionary bonuses must be included in […] regular rate of pay upon which overtime is calculated for purposes of FLSA." The same is true pursuant to the California Labor Code and the Wage Orders. *See* Cal. Lab. Code § 510 and Wage Order 4. Furthermore, "[w]here an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay […] have been established, his regular rate for that week is the weighted average of such rates." 29 C.F.R. § 778.115.

Here, Plaintiff, the class, and the collective received shift differentials which caused them to be paid at different rates during each week. Shift differentials are also non-discretionary and therefore must be included in the regular rate of pay for the purpose of calculating the correct overtime rate. Here, for some of the time at issue Defendants failed to always use the weighted average method as set forth in 29 C.F.R. § 778.115, which caused overtime to be paid at a rate lower than it should have been. Since Defendants did not properly calculate the overtime rate, which

resulted in underpaid wages, it violated both the FLSA and Cal. Lab. Code § 510. However, the amount of underpayment for the employees covered by the settled is less than $7,000.

### 2. Meal Break Violations

Pursuant to Cal. Lab. Code § 512, Defendants were obligated to provide a 30-minute meal break for every five hours of work. Furthermore, the meal period must take place no later than the end of an employee's fifth hour of work. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1041 (2012).

Plaintiff's analysis of Defendants' meal period records revealed potential meal break violations due to missed, late or short meal periods. If these meal periods were not "provided" within the meaning of applicable law, then there could be numerous violations of Cal. Lab. Code § 512.

These potentially late, short, or missed meal breaks form the basis of Plaintiff's meal period claim. As a result of the potential meal period violations, if Plaintiff established that they were not provided  the settlement class members are entitled to meal period premium pay in the amount of one hour of pay for each day a compliant meal period was not provided. Cal. Lab. Code § 226.7.

### 3. Wage Statement Penalties

Cal. Lab. Code § 226 requires that an employer issues wage statements that accurately list, among other things, the employee's rates of pay. The basis for the wage statement violation cause of action is that the wage statements did not include the accurate rates of pay since the overtime rate listed on the wage statements was incorrect. A relevant decision on this issue was decided in *Holak v. Kmart*, 2015 U.S. Dist. LEXIS 65439 (E.D. Cal. June 2014), which held that the injury requirement for a wage statement violation should be interpreted as minimal, and the employer can violate Cal. Lab. Code § 226 by not including the correct overtime rate on its wage statements.

///

### 4.  PAGA Penalties

PAGA allows an employee who is aggrieved of any Labor Code violation to bring an action as a proxy for the State of California to recover civil penalties in connection with the Labor Code violations of their employer. Cal. Lab. Code § 2699. Here, Plaintiff was aggrieved of the Labor Code violations discussed herein, and therefore brought this action pursuant to PAGA. Through this action, Plaintiff seeks civil penalties for Defendants' violation of Cal. Lab. Code §§ 201-203, 226, 226.3, 226.7, 510, 512, 558, and 1194.

## III.   TERMS OF THE SETTLEMENT

As stated above, the gross settlement amount is $400,000.00. The settlement is non-reversionary and therefore no funds will revert to Defendants following administration of the settlement. The settlement is broken down as follows:

- **$40,000** in PAGA penalties, of which 75% will be paid the California Labor and Workforce Development Agency and the rest distributed in a pro-rata share to the Aggrieved Employees.
- **$5,000** class representative enhancement for Plaintiff Veronica Smith.
- **$100,000** attorney fees, which is 25% of the gross settlement amount.
- **Up to $20,000** in costs reimbursements to Plaintiff's counsel, the final amount to be determined at final approval.
- **Up to $9,500** for costs of settlement administration.
- **$225,500**, or the net settlement amount, to be distributed in a pro-rata share to the collective and the class.

The class is defined as "All current and former non-exempt employees of Defendants who worked in the state of California for Defendants from May 30, 2015 through the date of preliminary approval."

Each class member's pro-rata share of the net settlement will be determined by converting the net settlement amount into a pay period value. The pay period value will be established by dividing the net settlement amount by all pay periods for the

class members from May 30, 2015 through the date of preliminary approval.

The settlement award for each class member will then be determined by multiplying the pay period value by the number of pay periods the class member worked during the Class Period. If any class members' individual share is less than $100, it will be increased to $100 and the other settlement class members' shares will be decreased on a pro-rata basis.

The settlement is non-reversionary and the class members do not need to submit claim forms. Class members will be given notice and an opportunity to dispute the number of workweeks credited to him or her. Further, each class member will have the option to submit an objection and/or request for exclusion from the settlement.  If the settlement is approved each class member who did not opt out will receive a settlement check.  The act of cashing the check will constitute his or her consent to opt-in to the FLSA collective action and will release their FLSA claims.

Notice of the settlement will be sent to the class members by U.S. mail to their last known address as reflected in Defendants' records. Skip tracing to the extent practicable shall be performed by the settlement administrator for all returned mail.

Settlement checks will remain valid for 180 days. Any uncashed checks will go to the California State Controller in the name of the settlement class member.

**IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT**

### 1.  Legal Standard for Preliminary Approval

Under Fed. R. Civ. Pro. 23(e), any compromise of a class action must receive court approval. "Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004), citing Manual for Complex Litig., Third, § 30.41 (1995).

Pursuant to Rule 23, preliminary approval of a proposed class action

settlement is appropriate where the parties make a "showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). As set forth below, the settlement class will likely be certified and all the requirements of Rule 23(e)(2) have been met.

### 2. The Settlement Class Meets the Prerequisites for Certification under Rule 23

In order to approve a settlement class, the court must confirm that the class "meets the four prerequisites identified in Federal Rule of Civil Procedure 23(a) and additionally fits within one of the three subdivisions of Federal Rule of Civil Procedure 23(b)." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 659 (E.D. Cal. 2008). Rule 23(a) requires that the Plaintiff demonstrates: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 441 (E.D. Cal. 2013).

Fed. R. Civ. P. 23(b)(3) requires the court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### A. Numerosity

The numerosity requirement provides that the class must be so numerous that joinder of all members individually is "impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity requirement can be satisfied so long as there is a reasonable basis for the estimate provided. *Feinman v. Federal Bureau of Investigation*, 269 FRD 44, 49 (D.D.C. 2010). Here, the estimate is based on Defendants' employment records; thus, is there is a concrete basis to identify and ascertain the 417 class members.

Although the requirement is not tied to any fixed numerical threshold, courts

have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." *Villalpando v. Exel Direct, Inc.*, 303 F.R.D. 588, 605-06 (N.D. Ca. 2014). Generally speaking, courts will find that the numerosity requirement has been satisfied when the class comprises 40 or more members, and will find that it has not been satisfied when the class comprises 21 or fewer. *Ansari v. New York Univ.* (SD NY 1998) 179 FRD 112, 114. Here, there are over 400 class members and therefore numerosity is satisfied.

### B. Commonality

Next, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is met through the existence of a common contention that is capable of classwide resolution in "one stroke." *Wal-Mart Stores, Inc. v. Dukes* (2011) 564 U.S. 338, 350. To justify class action treatment, there must be issues "common to the class as a whole"; and relief must "turn on questions of law applicable in the same manner to each member of the class." *General Tel. Co. of Southwest v. Falcon* (1982) 457 US 147, 155.

Here, Defendants' failure to pay overtime based on the correct regular rate and the corresponding wage statement violations, as well as and the existence of potential meal break violations, are questions of law and fact that are common to the class. Therefore, the commonality requirement is satisfied.

### C. Typicality

Third, the claims and defenses of the class representative must be typical of the claims and defenses of the class. Fed. R. Civ. P. 23(a)(3). The claims of the entire class need not be identical, but the class representatives must generally "possess the same interest and suffer the same injury" as the unnamed class members. *General Telephone Co. of Southwest v. Falcon* (1982) 457 U.S. 147, 156. Thus, "[i]n examining this condition, courts consider whether the injury allegedly suffered by the named plaintiffs and the rest of the class resulted from the same alleged common practice." *Dalton v. Lee Publications, Inc.*, 270 F.R.D. 555, 560 (S.D. Cal. 2010).

1  (internal quotation omitted).

2      Also, the purpose of the typicality requirement is to ensure that the class

3  representative will be motivated to protect the interests of the class. (I.e., a class

4  representative has an incentive to vigorously prosecute his or her own claims; if the

5  claims of the representative and the members of the class are typical, this vigorous

6  prosecution will inure to the benefit of the class members) *Eisenberg v. Gagnon*, 766

7  F2d 770, 786 (3rd Cir. 1985).

8      Plaintiff's claims are typical of the class members' claims, as they arise from

9  the same practices of at Defendants and the claims are based on the same legal

10  theories. See *Rosario v. Livaditis* (7th Cir. 1992) 963 F.2d 1013, 1018. These theories

11  are whether Plaintiff and the class members were not paid overtime properly,

12  whether Defendants' failure to list the correct overtime rate on Plaintiff's wage

13  statements resulted in a wage statement violation, and whether Plaintiff was denied

14  complaint meal breaks; all claims of which are typical of the class members' claims.

15                      **D. Adequacy of Representation**

16      The final prerequisite is that the person (or people) representing the class must

17  be able to "fairly and adequately protect the interests" of all members in the class.

18  Fed. R. Civ. P. 23(a)(4). The representation is "adequate" if: the attorney

19  representing the class is qualified and competent, the class representatives are not

20  disqualified by interests antagonistic to the remainder of the class, and the named

21  plaintiff must "prosecute the action vigorously" on behalf of the class. *In re Mego*

22  *Fin'l Corp. Secur. Litig.* (9th Cir. 2000) 213 F3d 454, 462.

23      These requirements are met based on Frontier Law Center's attorneys' class

24  action experience as explained in detail in the attached declaration. Also, Plaintiff

25  has no interests that are antagonistic to the class. The action was prosecuted

26  vigorously for nearly a year, which resulted in a fair, adequate, and reasonable

27  settlement for the class.

28  ///

**E.  Predominance**

Pursuant to Fed. R. Civ. Pro. 23(b)(3), the court may find that questions of law or fact common to class members predominate over questions affecting only individual members, and that a class actions is superior to other available methods for fairly and efficiently adjudicating the controversy. Predominance is determined not by counting the number of common issues, but by weighing their significance. *Mullen v. Treasure Chest Casino, LLC* (5th Cir. 1999) 186 F3d 620, 627.

Further, the objective is to promote economy and efficiency in actions that are primarily for money damages. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Adv. Comm. Note (1966) 39 FRD 102.

The predominance requirement is met here since the claims all stem from Defendants' classwide employment practices, as those practices form the questions of law and fact common to the class members.

**F.  Superiority**

Further, the court must also find that the class action is superior to individual lawsuits for resolving the dispute. *See Amchem Products, Inc. v. Windsor*, 521 US 591, 615, 117 S.Ct. 2231, 2246; *Valentino v. Carter-Wallace, Inc.* (9th Cir. 1996) 97 F3d 1227, 1231-1232; *Blackwell v. SkyWest Airlines, Inc.* (S.D. Cal. 2007) 245 F.R.D. 453, 467.

Rule 23 lists four factors relevant to the decision whether a class action is superior, but the list is not meant to be exhaustive. The factors, which are each analyzed below, are the following:

- The interest of members of the class in individually controlling the prosecution or defense of separate actions;

- The extent and nature of any litigation concerning the controversy already commenced by or against the members of the class;

- The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

- The difficulties likely to be encountered in the management of a class action (generally referred to as its "manageability"). Fed. R. Civ. Pro. 23(b)(3)(A)-(D); *see Vega v. T-Mobile USA, Inc.* (11th Cir. 2009) 564 F.3d 1256, 1278; *Thorn v. Jefferson-Pilot Life Ins. Co.* (4th Cir. 2006) 445 F.3d 311, 318-319.

For the first factor, a class action is superior since there would be relatively small recoveries if the class members had to prosecute separate actions, so there would be little to no interest in individual actions. For the second factor, a class action is superior since there are no other actions that comprise similar theories against Defendants. For the third factor, the Central District of California is the desirable forum, as most of the class members are in the Central District. Finally, for the fourth factor, a class action is manageable here based on the cogent employment law theories framed in the operative complaint.

For these reasons, a class action is the superior method for resolving this dispute.

### 3. The Proposed Class Notice is Sufficient

For a class certified under Rule 23(b)(3), the notice must clearly and concisely state in plain, easily understood language: 1) the nature of the action, 2) the definition of the certified class, 3) the class claims, issues, or defenses, 4) that a class member may enter an appearance through an attorney, 5) that the court will exclude a class member who requests exclusion, 6) the time and manner for requesting exclusion, and 7) the binding effect of a class action judgment under Rule 23(c)(3).

///

///

Here the proposed notice satisfies all these requirements and should be approved by the Court.

### 4.  The Court Should Preliminarily Approve the Settlement

Fed. R. Civ. P. 23(e)(2) requires the district court to consider a list of factors when granting preliminary approval, namely, whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Courts in the Ninth Circuit have typically found preliminary approval of a settlement and notice to the class is appropriate if the settlement is the "product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007), citing Manual for Complex Litig., Second, § 30.44 (1985).

Under the factors enumerated in Rule 23(e)(2) and the factors traditionally considered by the Ninth Circuit, the settlement warrants preliminary approval.

## A. The Class Representatives and Class Counsel Have Adequately Represented the Class

As discussed above, class counsel has adequately represented the class because the action was prosecuted vigorously, resulting in a fair and reasonable settlement. Further, the class represented has adequately represented the class because Plaintiff has no antagonistic interests to the class, has actively participated in prosecuting this action through settlement, and will continue to participate through final approval.

## B. The Proposed Settlement Is Fair Because It Was the Product of Arm's Length Non-Collusive Negotiations

In the case of *Jane Roes 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035 (9th Cir. 2019), the Ninth Circuit held that when a settlement has been negotiated prior to class certification, the settlement does not carry with it a presumption that it is "fair and reasonable." (*Id*. at 1049) Thus, in determining whether the settlement was reached through "arm's length negotiations," a Court should consider (1) the amount of adversarial litigation preceding the proposed settlement agreement; (2) the nature and amount of discovery conducted before the proposed settlement agreement; (3) the conduct of the negotiations, such as the involvement of a neutral mediator; and (4) the award of attorney's fees, including the manner of negotiating the fees. *See* Fed. R. Civ. P. 23(e)(2) Advisory Committee's note to 2018 amendment; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)

Notwithstanding the foregoing, the presumption of fairness still generally is presumed to exist when a proposed class settlement was negotiated through a certified mediator. *See Millan v. Cascade Water Servs., Inc*., 310 F.R.D. 593, 613 (E.D. Cal. 2015) (stating participation in mediation supports determination that settlement process was not collusive); *Satchell v. Fed. Express Corp*., 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). ///

Here, because the proposed settlement was reached through the assistance of a highly respected mediator experienced in wage and hour class action matters, it supports a determination that the settlement was negotiated at arm's length and is non-collusive.

## C. The Settlement is Reasonable and Adequate

In determining whether the relief provided to the class is adequate, the Court takes into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv).

1. <u>There Were Significant Costs, Risks, and Delay Associated with Trial and Appeal</u>

Although Plaintiff is reasonably confident that she would prevail on a motion for class certification, there was a risk the Court could deny certification and find that individual issues predominate, including the fact that some class members had signed arbitration agreements.

The risk that Defendants would defeat certification on some or all of Plaintiff's claims supports settlement, especially because most class members' claims are so small that individual litigation of their claims (required in the event certification was denied) is simply not feasible or realistic. Additionally, Plaintiff might not have been able to demonstrate "injury" to recover wage statement penalties or that there was any failure to provide meal periods in light of a facially valid meal period policy.

### i.   The Method of Distributing Relief to the Class is Both Effective and Efficient

Class members will be given notice and an opportunity to dispute the number of workweeks credited to him or her and each member will have the option to submit an objection and/or request for exclusion from the settlement and may choose  to opt

1  out of the settlement. Notice will be sent to the class members by U.S. mail to their

2  last known address as reflected in Defendants' records. Skip tracing to the extent

3  practicable shall be performed by the settlement administrator for all returned mail.

4  All class members who submitted timely and valid claims forms will receive

5  payments by check. Any unclaimed funds will go to the California State Controller

6  in the class member's name.

7             **ii.**    **The Attorney Fee Award is Reasonable and Customary**

8        Class Counsel will request one-third (33%) of the Gross Settlement Amount,

9  for a total of $132,000. In California, federal and state courts have customarily

10 approved payments of attorneys' fees amounting to one-third of the common fund in

11 comparable wage and hour class actions. *See Regino Primitivo Gomez, et al. v. H&R*

12 *Gunlund Ranches, Inc*., No. CV F 10-1163 LJO MJS, 2011 WL 5884224 (E.D. Cal.

13 2011) (approving attorneys' fees award equal to 45% of the settlement fund.) This

14 will be paid after final approval. Here, when considering the expeditious resolution

15 of this matter against the backdrop of the potential costs and difficulties associated

16 protracted class litigation, the fee and cost award is warranted.

17         **D. The Proposed Settlement Treats the Class Members Equitably**

18                  **Relative to Each Other**

19       Next, the court assesses if the settlement allocation unfairly benefits certain

20 class members. *Tijero v. Aaron Bros., Inc*., 2013 WL 60464, at *10 (N.D. Cal. Jan. 2,

21 2013). In doing so, "courts recognize that an allocation formula need only have a

22 reasonable, rational basis, particularly if recommended by experienced and

23 competent counsel." *Vinh Nguyen v. Radient Pharm. Corp.,* 2014 WL 18022393, at

24 *5 (C.D. Cal. May 6, 2014).

25       As described above, the class members will receive settlement amounts based

26 on a pro-rata number of workweeks each class member worked during the class

27 period. Plaintiff submits that this is a fair formula and there is no preferential

28 treatment to any class member.

### iii.    The Relief Provided to the Class is Adequate

A relevant factor in contemplating a potential settlement is "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010). Here, there are several risks associated with further litigation, including:

- The existence and impact of a collective bargaining agreement which could potentially bar the meal period claims entirely or compel the claims to arbitration;

- The existence of a facially valid meal period policy that provided a way for employees to report when a meal period was not "provided" and be paid a premium;

- Defenses to the meal period claims, including if some members chose not to take meal breaks or chose to take late or short meal breaks on their own volition;

- Defenses to the wage statement penalties, including the position that wage statement claims which are derivate of a failure to pay overtime at the correct rate is not knowing and intentional and the fact that during most of the statutory period the regular rate issue was fixed;

- The risk that a class or collective may not be maintained through trial; and

- The risks generally associated with and inherent in litigating the merits.

Given the nature of Plaintiff's claims and the risks described above, the settlement provides a substantial benefit to the class members. Plaintiff's expert calculated the unpaid overtime as being $6,943.00, wage statement penalties of $98,000, and potential meal period liability of $2,898.188.27 assuming a 100% violation on meal period violations, which might be slightly high.

In sum, the total potential liability was calculated to be $3,003,131.27. Therefore, the settlement represents a recovery of 7.5% of the total potential maximum liability (which includes the 100% meal period violation rate).

Determining whether the settlement falls in the range of reasonableness requires evaluating the relative strengths and weaknesses of the case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount. See *In re High–Tech Emp. Antitrust Litig*., 2014 WL 3917126, at *4.

Here, success on the meal break claims would prove challenging due to the existence of the collective bargaining agreement, the facially valid meal period policy, and the difficulty in proving whether the class members' breaks were noncompliant by choice or because of company policy the requirement by management. Therefore, while Plaintiff feels particularly confident on the overtime and wage statement claims, a compromise on the meal break claims (to which most liability was attributed) was reasonable given these challenges.

Because of the risks described above, the substantial, non-reversionary cash recovery, and the benefits to be gained from resolving this matter now rather than dragging this litigation on for several years, the settlement falls within the range of reasonableness required for approval.

## V.    CONCLUSION

Based on the above arguments and the attached declaration of Adam Rose, along with its attached exhibits (the settlement agreement, the notice to class members, and the CAFA notice), Plaintiff respectfully requests the Court to grant the motion for preliminary approval of the settlement and approve the lodged order for preliminary approval.

Date:  June 22, 2020                                    FRONTIER LAW CENTER


                                                        /s/ Adam Rose
                                                        Attorney for Plaintiff
                                                        Veronica Smith