Adam Rose (210880)
adam@frontierlawcenter.com
Manny Starr (319778)
manny@frontierlawcenter.com
FRONTIER LAW CENTER
23901 Calabasas Road, #2074
Calabasas, California 91302
Telephone: (818) 914-3433
Facsimile: (818) 914-3433

Sam Donabedian (304196)
sdonabedian@donabedianlaw.com
DONABEDIAN LAW
21550 Oxnard Street, 3rd Floor
Woodland Hills, California 91367
Telephone: (213) 761-7268
Facsimile: (213) 799-3000

Attorneys for Plaintiff
Veronica Smith

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VERONICA SMITH, individually and on behalf of all others similarly situated and all aggrieved employees,

Plaintiff,

v.

BUDGET RENT A CAR SYSTEM, INC., AVIS BUDGET GROUP, INC., and DOES 1 to 10,

Defendants.

CASE NO. 2:19-cv-04720-SVW (PLAx)

PLAINTIFF VERONICA SMITH'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ADAM ROSE; PROPOSED ORDER

Date: November 16, 2020
Time: 1:30 p.m.
Ctrm: 10A

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on November 16, 2020 at 1:30 p.m. or as soon thereafter as may be heard in Courtroom 10A of the Central District of California located at 350 W. First Street, Los Angeles, CA 90012, plaintiff Veronica Smith will move the

Court for final approval of the class, collective, and PAGA action settlement pursuant to Fed. R. Civ. Pro. 23(e), 29 USC § 216(b), and Cal. Lab. Code, § 2699(l)(2). The motion is based on this notice, the memorandum of points and authorities, the declaration of Adam Rose and its exhibits, pleadings on file, and oral arguments at the hearing.

Date: October 28, 2020

FRONTIER LAW CENTER

/s/ Adam Rose
Attorney for Plaintiffs
Veronica Smith

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(e)(2), as well as 29 USC § 216(b) and Cal. Lab. Code, § 2699(l)(2), plaintiff Veronica Smith requests the court to grant final approval of the class, collective, and PAGA settlement with Budget Rent A Car System, Inc., and Avis Budget Group, Inc. The court previously reviewed the settlement agreement with rigor and scrutiny when it granted preliminary approval. Nothing since that time should alter the conclusion that the settlement is fair, reasonable, and adequate.

## II. CASE FACTS AND BACKGROUND

This case is a class action, FLSA collective action, and PAGA action that relates to plaintiff Veronica Smith's work for defendants Budget Rent A Car System, Inc. and Avis Budget Group, Inc. Plaintiff's employment began in May 2014, and she works as a "Rapid Return Agent" at defendants' Los Angeles International Airport location to help customers return their cars. The main theories of this case are Defendants' failure to pay overtime at the correct rate by not including wage differentials (higher hourly rates during nighttime hours) in the calculation, not paying meal break premiums for late, short, or missed meal breaks, and the derivative waiting time and wage statement penalties.

Following preliminary approval, the approved notice to class members was mailed out. This process is explained further in the concurrently filed declaration of Elizabeth Kruckenberg, the settlement administrator. The class members had until October 5, 2020 to opt out of the settlement, and until October 30, 2020 to lodge any objections to the settlement.

Pursuant to the settlement agreement, as there were no objections, the payment after final approval will be funded within 30 days of final approval order and judgment being entered, and then can be disbursed after an additional 30 days to see

if there were an appeal. Fed. R. App. P. 4.

## III. LEGAL STANDARD

A class action may be settled only with the court's approval. Fed. R. Civ. P. 23(e). "Approval under [Rule] 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to the class members, whether final approval is warranted." *Nat'l Rural Telecomms. Corp. v. DIRECTV, Inc*., 221 F.R.D. 523, 525 (C.D. Cal. 2004). At final approval, the inquiry is whether the settlement is fair, adequate, and reasonable. *Lane v. Facebook, Inc*., 696 F.3d 811, 818 (9th Cir. 2012).

The settlement taken as a whole, rather than its component parts, that is examined for overall fairness. *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998). In making this inquiry, the court is mindful that the law favors compromise and settlement of class actions. *See, e.g*., *In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, LLC v. Gen. Elec*., 361 F.3d 566, 576 (9th Cir. 2004).

## IV. DISCUSSION OF HANLON FACTORS

Evaluating a class action settlement for final approval includes balancing the following factors: 1) strength of plaintiff's case, 2) risk, expense, complexity, and likely duration of further litigation, 3) risk of maintaining class action status through trial, 4) amount offered in settlement, 5) extent of discovery completed and the stage of the proceedings, 6) experience and views of counsel, 7) presence of a governmental participant, and 8) reaction of the class members. *Hanlon*, 150 F.3d at 1026. Here, there were no objections or requests for exclusion among the 417 class members; the factors are analyzed below.

///

///

**A. Strength of the Case**

The initial factor addresses the likelihood of success on the merits and the range of possible recovery. *Franco v. Ruiz Food Prod., Inc.*, 2012 WL 5941801, at *11 (E.D. Cal. Nov. 27, 2012).

Plaintiff estimated the likelihood of success on the regular rate violation was strong since some of the wage statements that were informally produced showed that the overtime rate did not include the wage differentials in the overtime calculation. Likewise, Plaintiff estimated that the missed breaks portion of the case was strong, since a review of timesheets showed instances where breaks were missed after the fifth hour but no premium pay (additional hour of compensation) was paid.

These strengths are balanced by the following: 1) Defendants claimed they acknowledged the regular rate violations and took measures to correct them, 2) the difference in unpaid wages for the regular rate violation was not be substantial, and 3) an further inquiry into the missed breaks violations could show that many class members were provided with meal breaks. *Brinker v. Superior Court*, 53 Cal.4th 1004, 1021 (2012).

Nonetheless, when balancing the strengths against the risks, Plaintiff strongly believes the settlement is fair, reasonable, and adequate.

**B. Risk, Expense, and Likely Duration of Further Litigation**

This factor relates to the probable costs, in both time and money, of continued litigation. *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *4 (N.D. Cal June 27, 2014). Unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results. *Franco*, 2012 WL 5941801, at *12.

The risks of proceeding further were threefold: first, Plaintiff might not obtain class certification if the typicality requirement were not met, since there was a possibility the regular rate and missed break violations did not affect all the class

members. Second, even if Plaintiff obtained FLSA certification, few people would decide to opt in. Finally for PAGA, the court might have been inclined to reduce the penalties pursuant to Cal. Lab. Code, § 2699(e)(2). The settlement reached at mediation demonstrates a compromise between these competing positions.

C. **Risk of Maintaining Class Action Status**

This factor relates to the possibility that a class faces possible decertification. *Moore v. PetSmart, Inc*., 2015 WL 5439000, No. 5:12-cv-3577-EJD, at *6 (N.D. Cal. Aug. 4, 2015). The risk of decertification was arguably small given the evidentiary support, however there was still a possibility of potential decertification if new facts were revealed, which could include a potential defense of collective bargaining agreement preemption.

D. **The Amount Offered in Settlement**

The gross settlement amount is $413,884.03. This higher amount is pursuant to the “escalator clause” in the settlement agreement that provided for an additional amount if the class size exceeded 417; the actual class size is 484.

Plaintiff’s attorneys have analyzed the potential value of the claims and Plaintiff's expert calculated the unpaid overtime as being $6,943.00, wage statement penalties of $98,000, and potential meal period liability of $2,898.188.27 when assuming a 100% violation on meal period violations, which might be slightly high.

In sum, the total potential liability was calculated to be $3,003,131.27. Therefore, the settlement represents a recovery of 7.5% of the total potential maximum liability. However, determining whether the settlement falls in the range of reasonableness requires evaluating the relative strengths and weaknesses of the case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount. *See In re High–Tech Emp. Antitrust Litig*., 2014 WL 3917126, at *4.

Here, success on the meal break claims would prove challenging due to the existence of the collective bargaining agreement, the arguably facially valid meal period policy, and the difficulty in proving whether the class members' breaks were noncompliant by choice or because of company policy the requirement by management. Therefore, while Plaintiff feels particularly confident on the overtime and wage statement claims, a compromise on the meal break claims (to which most liability was attributed) was reasonable given these challenges.

Because of the risks described above, the substantial, non-reversionary cash recovery, and the benefits to be gained from resolving this matter now rather than dragging this litigation on for several years, the settlement falls within the range of reasonableness required for approval.

Further, in determining whether the relief provided to the class is adequate, the Court takes into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv). Each of the four items are analyzed:

**1. There Were Costs, Risks, and Delay Associated with Trial**

Although Plaintiff was reasonably confident she could prevail on a motion for class certification, there was a risk of no certification if the court found that individual issues predominate, including the fact that some class members had signed arbitration agreements.

There was also a risk that Defendants could defeat certification as some class members' claims were small enough that individual litigation of their claims might not be feasible or realistic. Additionally, Plaintiff might not have been able to demonstrate "injury" to recover wage statement penalties or that there was any

failure to provide meal periods considering a facially valid meal period policy.

**2. Effectiveness and Efficiency of Distributing Relief to the Class**

The declaration of settlement administrator Elizabeth Kruckenberg discusses the distribution and settlement administration through this point. Also, class members were given notice and an opportunity to dispute the number of workweeks credited to him or her and to submit objections and/or requests for exclusion.

Notice was sent to the class members by U.S. mail to their last known addresses. Skip tracing was performed by the settlement administrator for all returned mail. All class members who submitted timely and valid claims forms will receive payments by check, and any unclaimed funds will go to the California State Controller in the class member's name.

As described above, the class members will receive settlement amounts based on a pro-rata number of workweeks each class member worked during the class period. Plaintiff submits that this is a fair formula and there is no preferential treatment to any class member.

**3. The Proposed Attorney Fees are Customary and Reasonable**

Class Counsel will request 25% for attorney fees of the Gross Settlement Amount, for a total of $100,000. This is the benchmark amount for federal cases in the Ninth Circuit. *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.1990). This will be paid after final approval. When considering the expeditious resolution of this matter against the backdrop of the potential costs and difficulties associated protracted class litigation, the fee and cost award is warranted.

**4. Agreements Under Rule 23(e)(3)**

The attorney fees will be split evenly between Frontier Law Center and Donabedian Law. Plaintiff has consented to this split.

## V. THE FLSA ASPECT SHOULD BE APPROVED

In order to approve a settlement proposed by an employer and employees, a court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute" of the FLSA claims. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1355; *Ambrosino v. Home Depot U.S.A, Inc.*, No. 11CV1319 L(MDD), 2014 WL 3924609, at *1-2 (S.D. Cal. Aug. 11, 2014).

If a settlement in an FLSA suit reflects a "reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354. Court approval of FLSA settlements helps ensure that the resolution is not "a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores*, 679 F.2d at 1354. Also, settlements of court actions are permissible because "initiation of the action by the employees provides some assurance of an adversarial context." *Id*.

This case presented a bona fide dispute over wages based on the argument that the regular rate of pay did not include all remuneration paid to employees pursuant to 29 U.S.C. § 207(e). When the employees worked during relatively inopportune hours, they were paid shift differentials at higher hourly rates. The shift differentials were not incorporated into the regular rate which led to wage disparities.

The settlement incorporates the FLSA portion of the action. To determine whether a FLSA settlement is fair and reasonable, the court evaluates the "totality of the circumstances" within the context of the purposes of the FLSA. *Slezak v. City of Palo Alto*, No. 16-cv-03224-LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017). Plaintiff submits that given the totality of the circumstances as described above, that the FLSA settlement is fair and reasonable, and should be approved.

///

///

## VI.   THE PAGA ASPECT SHOULD BE APPROVED

Pursuant to Cal. Lab. Code, § 2699(l)(2), the court shall review and approve any settlement where there is an allocation for PAGA penalties.

There are no established criteria for a court to approve a PAGA settlement other than the settlement is fair and adequate in view of the purposes and policies of the PAGA statute. *O'Connor v. Uber Technologies, Inc.*, 201 F.Supp.3d 1110, 1135 (N.D. Cal 2016). The purpose of PAGA is deterrence. *Id*. at 1134.

The purpose of PAGA has been fulfilled here, as Defendants now use the correct regular rate of pay calculation for overtime. As stated in the motion for preliminary approval, the PAGA allocation is $40,000. Of this amount, 75% or $30,000 will be sent to the Labor and Workforce Development Agency. This amount arguably helps the State. Plaintiff respectfully requests the court to approve the PAGA aspect.

## VII.   CONCLUSION

In sum, the delineation of the $413,884.03 gross settlement is the following:

1. Attorney fees of $103,471
2. Attorney costs of $14,262.53
3. Settlement administration expenses of $9,500
4. Class representative enhancement of $5,000
5. PAGA allocation of $40,000
6. $255,121.50 net settlement for distribution

Based on the foregoing statements and arguments, Plaintiff respectfully requests the court to approve the motion for final approval.

Date: October 28, 2020                                    FRONTIER LAW CENTER

/s/ Adam Rose
Attorney for Plaintiff
Veronica Smith

-11-
MOTION FOR FINAL APPROVAL